NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0560n.06

No. 17-6508

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JEFFREY WALTERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CSX TRANSPORTATION, INC., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: McKEAGUE, GRIFFIN, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Jeffrey Walters, a conductor employed by Defendant CSX, appeals from the district court's grant of summary judgment to CSX in this negligence action brought under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 *et seq*. Walters was injured when the van in which he was a passenger went off the road while being driven by William Topper, a driver employed by CSX agent PTI, Inc.,[1] to transport Walters and CSX engineer Charles Jones to Fairmouth, Kentucky to replace a train crew. Following discovery, Walters filed a motion for partial summary judgment on the issue of CSX's breach of duty and CSX moved for summary judgment on the basis that Walters could not establish negligence. The district court granted CSX's motion.

---

[1] Walters attached to his motion for summary judgment CSX's letter to PTI dated August 29, 2013, stating that CSX and PTI entered into a contract effective January 1, 2008 that was in effect on the date of the incident, August 9, 2013.

No. 17-6508, *Walters v. CSX Transportation, Inc.*

## I.

This court reviews a district court's grant of summary judgment de novo, *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 426–27 (6th Cir. 2010), viewing the evidence, facts, and inferences in the light most favorable to the non-moving party, *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269–70 (6th Cir. 2007).

The FELA provides in pertinent part:

> Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

45 U.S.C. § 51. The FELA does not define negligence, "leaving that question to be determined . . . by the common law principles as established and applied in the federal courts." *Urie v. Thompson*, 337 U.S. 163, 174 (1949) (quotation marks and citation omitted).

To present a prima facie case under FELA, Walters must establish that: (1) he was injured within the scope of his employment; (2) his employment was in furtherance of CSX's interstate transportation business; (3) CSX was negligent; and (4) CSX's negligence played any part in causing the injury for which he seeks compensation. *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011); *Van Gorder*, 509 F.3d at 269. It is undisputed that Topper, the van driver, was an agent of CSX.

## II.  Cross-Motions for Summary Judgment

Walters's motion for partial summary judgment on the issue of CSX's breach of duty asserted that the PTI driver:

> failed to stay on the road and instead drove the transport vehicle off of the roadway and into a ditch . . . . There can be no argument that the PTI driver did not breach his duty of care or that injuries are not foreseeable when he failed to maintain control of the transport vehicle that he was driving by failing to steer the vehicle so that the vehicle did not leave the intended roadway.

PID 140, 146-47. Walters's affidavit, attached to his motion for partial summary judgment, averred, "While I was a passenger in [the PTI] vehicle the driver was supposed to make a left turn onto an access road, however he failed to stay on the road and instead drove the vehicle over a concrete retaining wall," "the vehicle jolted and came to a sudden and unexpected stop," and "[a]s a result of the impact I have suffered injury to my back and body." PID 149.

Walters's "Employee's Incident Report," signed on August 24, 2013, states:

Riding in PTI van cross over bridge crossing tracks. Left turn to go to train. Taxi missed the road and went over a embankment slaiming [sic] to sudden stop.

Under the section titled "WAS ANYONE AT FAULT?" Walters checked "yes" and wrote "PTI Driver." PID 818.

Walters also attached to his motion his answers to CSX's first set of interrogatories, which state in pertinent part:

Defendant's agent/employee failed to exercise a reasonable degree of care while negotiating a left-hand turn when the defendant drove the transport vehicle off of the paved roadway and over the side of a concrete retaining wall . . .

PID 1643. And a letter from CSX to PTI dated August 29, 2013, attached to Walters's motion, states in pertinent part:

As your records will reflect, on August 9, 2013, a PTI van . . . operated by a PTI driver and occupied by two CSXT employee passengers had an accident on Glahn Lane, Butler KY; whereas, the driver missed a left turn causing the van to run off the road into a ditch. The CSXT employee passengers were Engineer Charles Jones and Conductor Jeffrey Walters. Mr. Walters advises that he was injured . . . .
This is to notify PTI and its insurance providers of potential claims from the referenced accident . . . .

PID 150.

CSX's motion for summary judgment argued only that Walters presented insufficient evidence to establish negligence,[2] the third prima facie element. CSX did not dispute that PTI was its agent or that PTI owed Walters a duty of care; it argued simply that Walters "produced no competent evidence that the driver operated the vehicle in a less than prudent fashion," and that "[t]he only evidence produced . . . is that the driver was acting appropriately when, without warning, the vehicle left the roadway because the edge of the road could not be seen. The burden is upon the Plaintiff to produce evidence of negligence and he has failed to do so." PID 1222, 1224.

The district court granted CSX summary judgment, reasoning in part that Jones's deposition testimony that the PTI driver "was unable to see the turn in time" and attempted to make the left turn too late was not evidence of negligence. The district court concluded that Walters relied "on the outcome of the driver's actions (i.e., the vehicle ending up over the embankment) to show negligence, rather than the driver's actions in operating the vehicle, which according to Jones and Walters were not inappropriate or out of the ordinary." PID 4120.

**III.**

Walters asserts that the district court erred in granting CSX summary judgment because the evidence went beyond simply establishing that an accident occurred and, at minimum, created a genuine issue of material fact regarding PTI's negligence. Walters presented Jones's deposition testimony that the PTI van driver attempted to make a sharp left turn *after* it was clear he could not do so safely, and "the evidence ruled out non-negligent causes—there was no emergency, there

---

[2] CSX asserted that it "disputes that Walters was injured as alleged within the scope of his employment," but conceded that Walters's testimony "is sufficient to raise an issue of fact" on that prima facie element. PID 1223-24 n.1. CSX did not dispute that Walters's employment was in furtherance of interstate commerce.

was no black ice in Kentucky on an August evening, the ground was dry, and there were no other vehicles involved in the incident." Br. 16. Walters asserts, "There was testimony that there was almost no light in the remote location where the vehicle was operating. But under those circumstances, a prudent driver would have been more cautious before attempting to make a sharp turn." Br. 20.[3]

CSX was not entitled to summary judgment as a matter of law. CSX's argument that Walters "produced no competent evidence that the driver operated the vehicle in a less than prudent fashion" mischaracterizes the record, as does CSX's argument that Walters "alleges he was injured when the van in which he was riding *suddenly left the roadway*." PID 1222, 1224. Jones's deposition testimony that the PTI driver attempted the sharp left turn too late to negotiate the turn safely is sufficient to raise a fact issue on PTI's negligence. The district court cited Jones's testimony but concluded

> it is this very argument that shows Walters has not come forward with any evidence of negligence. He is relying on the outcome of the driver's actions (i.e., the vehicle ending up over the embankment) to show negligence, rather than the driver's actions in operating the vehicle.

PID 4120. Jones's deposition testimony does not go only to the outcome—that the van ended up over an embankment or in a ditch—but also to the driver's conduct and how the accident occurred. A jury could conclude from Jones's testimony that a reasonable driver, under hire to transport CSX employees safely, would not have attempted to execute the sharp and barely visible turn after

---

[3] Walters also points to an Accident Report drafted by the PTI driver, in which the driver stated that he could not see the turn due to poor lighting but still attempted to turn. But as CSX points out, Walters did not cite that document below and the district court therefore did not consider it. Even without considering the Accident Report however, we conclude that Walters produced sufficient evidence to create a material dispute of fact regarding whether the driver was negligent.

missing the opportunity to do so safely, but rather, would have continued ahead, turned around, and come back from the other direction to make the turn safely.

The district court correctly observed that Walters and Jones testified that up to the time the PTI driver attempted the left turn, they noticed no negligent conduct on his part; but that is beside the point. A negligent act can occur at any time; it does not matter that Walters and Jones observed no negligent conduct immediately preceding the PTI driver attempting the turn too late to negotiate it safely.

In addition, the district court failed to take into account that the evidence ruling out non-negligent reasons for Topper's leaving the road was uncontroverted, i.e., there was no emergency, there were no adverse-weather conditions, no other vehicle was involved, and the van's headlights were working.[4]

For these reasons, we reverse the district court's grant of summary judgment to CSX and remand for proceedings consistent with this opinion.

---

[4] Because Walters advances res ipsa loquitur for the first time on appeal, we decline to address that argument. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 387 (6th Cir. 2000). Walters did not argue res ipsa in his motion for summary judgment or in his response to CSX's motion.